U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 19 2021
AT___ O'CLOCK
John M. Domurad, Clerk - Albany

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:21-CR-298(LEK) |
| | ) | |
| v. | ) | **Indictment** |
| | ) | |
| **DEREK R. SCHWARTZ,** | ) | Violations:   18 U.S.C. §§ 1349, 1343 |
| | ) | [Conspiracy to Commit |
| | ) | Wire Fraud] |
| | ) | |
| | ) | 18 U.S.C. § 1343 |
| | ) | [Wire Fraud] |
| | ) | |
| | ) | 5 Counts & Forfeiture Allegation |
| | ) | |
| **Defendant.** | ) | County of Offense:   Saratoga |

### THE GRAND JURY CHARGES:

#### Background

At all times relevant to this indictment:

1. Michael T. Mann ("Mann") resided in the Northern District of New York, and owned and operated ValueWise Corporation ("ValueWise") and other companies based in Clifton Park, New York.

2. ValueWise performed consulting services for Optum, a division of UnitedHealth Group Incorporated ("UHG") located in Minnesota, until in or about May 2017, when Optum/UHG terminated its relationship with ValueWise.

3. The defendant, **DEREK R. SCHWARTZ ("SCHWARTZ")**, resided in Texas and worked for ValueWise and operated several of its associated companies, including TrueHR, LLC ("TrueHR"), a human resources company based in Dallas, Texas, which ceased operations in or around August 2016.

4. Luke E. Steiner ("Steiner") resided in Minnesota and was an employee of Optum/UHG.

5. Financing Company-1 and Financing Company-2 were financing companies headquartered in New York and Colorado, respectively.

## COUNT 1
### [Conspiracy to Commit Wire Fraud]

### The Conspiracy

6. Paragraphs 1 through 5 are hereby re-alleged and incorporated by reference as if fully set forth herein.

7. From in or around 2013 through in or around September 2019, in Saratoga County in the Northern District of New York, and elsewhere, the defendant, **DEREK R. SCHWARTZ**, Michael T. Mann, and Luke E. Steiner, conspired to commit wire fraud, by devising and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmitting and causing to be transmitted by means of wire communication in interstate commerce, writings, signs and signals for the purpose of executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Object of the Conspiracy

8. The object of the conspiracy was to fraudulently obtain millions of dollars in loans from financing companies, including Financing Company-1 and Financing Company-2, by falsely representing that (a) fictitious invoices from companies owned and controlled by Mann were legitimate and payable by Optum/UHG; (b) Optum/UHG was making payments in satisfaction of these invoices; and (c) Steiner and other Optum/UHG employees were authorized and had the requisite knowledge to verify the authenticity and accuracy of these invoices.

## Manner and Means

It was a manner and means of the conspiracy that:

9. From at least 2013 through September 2019, Mann orchestrated a scheme to obtain millions of dollars in loans from financing companies, including Financing Company-1 and Financing Company-2, under false pretenses. To obtain the loans, Mann falsely represented that certain of his companies other than ValueWise, including FocalPointe Group, LLC ("FocalPointe") and Weitz & Associates, Inc. ("Weitz"), performed consulting work for and had accounts receivables payable by Optum/UHG. As Mann and **SCHWARTZ** well knew at all relevant times, these companies did not, however, have any accounts receivables payable by Optum/UHG.

10. Mann routinely created false invoices purportedly from his companies, including FocalPointe and Weitz, falsely reflecting millions of dollars in payments purportedly due from Optum/UHG to Mann's companies. He then assigned the invoices to financing companies. The financing companies, including Financing Company-1 and Financing Company-2, loaned millions of dollars against the false receivables to Mann and his companies. Mann then used other fraudulently obtained funds to pay the amounts of the false invoices to the financing companies and made it appear as if payment came from Optum/UHG, when the payments in fact came from Mann.

11. In furtherance of the scheme, **SCHWARTZ** worked with Mann and Steiner to falsely represent to the financing companies that: (a) the false invoices were valid and payable by Optum/UHG; (b) Optum/UHG was making payments in satisfaction of these invoices; and (c) Steiner and other Optum/UHG employees were authorized and had the requisite knowledge to verify the authenticity and accuracy of these invoices. **SCHWARTZ** also falsely represented to

3

Financing Company-2 that a company he operated, TrueHR, was regularly receiving payments from Weitz as a contractor to Weitz.

12. Prior to joining ValueWise, and until his termination in or about September 2013, **SCHWARTZ** was a high-level executive at Optum/UHG and supervised Steiner. In or about October 2013, **SCHWARTZ** recruited and induced Steiner to falsely represent to financing companies that the false invoices and receivables submitted by Mann to the financing companies were valid and payable by Optum/UHG.

13. Steiner, purporting to act in his capacity as an Optum/UHG employee, routinely and knowingly made false statements to various financing companies, including to Financing Company-1 from in or around October 2013 to in or around August 2019, and to Financing Company-2 from in or around 2014 to in or around February 2017, representing that the false invoices submitted by Mann were due and payable by Optum/UHG when, as Steiner, Mann and **SCHWARTZ** then well knew, the invoices were false. Steiner also falsely represented himself to be an Optum/UHG employee with the requisite authority and knowledge to verify the authenticity and accuracy of the invoices submitted by Mann, which, as Steiner, Mann and **SCHWARTZ** then well knew, was untrue. These false representations were made by emails and telephone calls transmitted between two or more states.

14. For instance, on or about October 28, 2014, a representative of Financing Company-1 ("Representative-1") sent Steiner an email at his Optum email address and attached an "Invoice Aging Report" reflecting approximately $4.6 million in purported invoices from FocalPointe to Optum/UHG assigned to Financing Company-1. In the body of the email, Representative-1 wrote, "Would you please confirm, by returning this email, that you show that United Health – Optum has these invoices and shows them as correct and now owing for the

4

account of Focalpoint Group LLC," and "that you show them payable to [Financing Company-1] as assignee."

15. Later that day, Steiner forwarded the email to Mann and wrote "FYI." Mann, after asking, "Did you reply?" and explaining, "You can copy and paste what is below if you haven't," wrote: "Yes, United Health - Optum has these invoices and they are correct for the account of Focalpointe Group LLC except for invoices 1151, 1152 and 1153. You should have received payment today. These are payable to [Financing Company-1] as assignee." Steiner, in turn, responded to Representative-1's email and, copying from Mann's email, wrote: "Yes, Optum has these invoices and they are correct for the account of Focalpointe Group LLC except for invoices 1151, 1152 and 1153. You should have received payment today."

16. At times, Steiner expressed discomfort with verifying the false invoices, and at Mann's request, **SCHWARTZ** assuaged Steiner's concerns. For instance, on or about February 27, 2017, Mann and **SCHWARTZ** exchanged the following iMessages regarding **SCHWARTZ'** conversation with Steiner concerning verifying false invoices to Financing Company-1:

| | |
|---|---|
| **SCHWARTZ:** | Hey Mike, you there? |
| Mann: | Yes |
| Mann: | Anything? |
| **SCHWARTZ:** | I spoke to Luke and covered everything. He seemed normal. I'm set up to talk to him again tomorrow and / or the next day. I'm also queued up to come to town and have lunch with him. If you want me to call you, I can probably call in about an hour. |
| Mann: | Nope. We are good |
| Mann: | Did you say anything about responding to [Representative-1]? |
| **SCHWARTZ:** | Yes. |
| Mann: | Thank you |
| **SCHWARTZ:** | yw [you're welcome] |

On or about August 16, 2017, Mann sent an iMessage to **SCHWARTZ** stating in pertinent part, "I still need Luke to approve [Financing Company-1] invoices. ... Just be careful what you say to him. We can discuss if you need to discuss."

5

17. Between in or about 2013 and in or about August 2019, Mann regularly instructed Steiner what to falsely represent to Financing Company-1 and to Financing Company-2, and discussed Steiner's misrepresentations with **SCHWARTZ**, via email, text message, and telephone. Those communications, as well as the emails between Steiner and Financing Company-1 and Financing Company-2, were transmitted between two or more states.

18. Between in or around October 2014 and July 2015, **SCHWARTZ** also recruited and induced other Optum/UHG employees ("Individual-1" and "Individual-2") to represent to financing companies that the false receivables submitted by Mann to the financing companies were valid and payable by Optum/UHG. Individual-1 and Individual-2 falsely represented themselves to be Optum/UHG employees with the requisite authority and knowledge to verify the authenticity and accuracy of the invoices submitted by Mann, which, as Mann and **SCHWARTZ** then well knew, was untrue. These false representations were made by emails and telephone calls transmitted between two or more states.

19. At Mann's request, **SCHWARTZ** also routinely and knowingly made false representations to Financing Company-2 concerning Weitz' use of loan proceeds.

20. In obtaining financing from Financing Company-2, Mann falsely represented that the loan proceeds would be used to pay Weitz' contractors, which Financing Company-2 and Mann sometimes referred to as "vendors." On a regular basis, Financing Company-2 sought to verify that the loan proceeds were in fact used to pay vendors, and Mann regularly sent emails to Financing Company-2 reflecting Weitz' purported payments to vendors. As part of its due diligence, Financing Company-2 then emailed the purported vendors to confirm that the vendors in fact received payment from Weitz.

6

21.     Mann falsely represented to Financing Company-2 that TrueHR – which was not a Weitz contractor, but instead a company owned by Mann and operated by **SCHWARTZ** – was one of Weitz' vendors. On more than 30 occasions between in or about 2014 and in or about 2018, **SCHWARTZ** sent emails from his TrueHR email address to Financing Company-2 representatives falsely confirming TrueHR's purported receipt of checks from Weitz. **SCHWARTZ** made these misrepresentations to Financing Company-2 even after TrueHR ceased its operations in or around August 2016. These false representations were made by emails transmitted between two or more states.

22.     For instance, on November 18, 2015, Mann sent an email to Financing Company-2 titled, "Vendor Payments," and wrote: "Enclosed are the weekly vendor payments." A spreadsheet attached to the email included the following information:

| Vendor | Check Date | Check Number | Check Amount |
|--------|------------|--------------|--------------|
| TrueHR | 13-Nov     | 5203         | $ 191,346.43 |

Later that day, an employee of Financing Company-2 ("Representative-2") sent an email to **SCHWARTZ** at his TrueHR email address titled, "Weitz ck 5203," and wrote: "Hello Derek! Can you please confirm that you've received check 5203 for 191,346.43 from Weitz & Associates?" Also on November 18, 2015, **SCHWARTZ** falsely responded: "Yes, this is confirmed." As **SCHWARTZ** well knew at the time he responded to Representative-2, TrueHR did not receive a $191,346.43 check from Weitz in or around November 2015.

23.     On or about October 25, 2017, Mann sent an iMessage to **SCHWARTZ** stating, "You probably received a verification email from [Financing Company-2] today. You can respond that you received the check. You have to make sure you send it from your TrueHR account. That is a must!". That same day, **SCHWARTZ** received an email from Representative-2 stating, "I

7

hope this finds you well. When you have a moment, please confirm TrueHR's receipt of Weitz & Associates check #5593 for $308,475.67," to which **SCHWARTZ** falsely responded, from his TrueHR email address, "This is confirmed." As **SCHWARTZ** well knew at the time he responded, TrueHR did not receive a $308,475.67 check from Weitz in or around October 2017, and was not even in business at that time.

24. On or about January 25, 2018, Mann sent an email to **SCHWARTZ** with the subject line, "Check your trueHR email." After **SCHWARTZ** used his TrueHR email account to send an email to Financing Company-2 falsely confirming TrueHR's purported receipt of a check from Weitz, he sent Mann an email stating, "Thanks. I responded." Approximately 40 minutes later, Mann sent **SCHWARTZ** an email stating, "I assume you sent it from your TrueHR email. I know it is stupid of me to say this every time," to which **SCHWARTZ** responded, "Not stupid at all. I have that same conversation with myself every time and double check the 'from' address to ensure that I select the correct account and that everything populates correctly." On January 25, 2018, **SCHWARTZ** also sent a second response to Mann's email, stating, "In fact, I even check the account to which [Representative-2] responds when she sends me a thank you email. I am over the top hyper sensitive to these details."

25. **SCHWARTZ** and Mann also worked together to fabricate other purported vendors to Weitz, and to create fake identities and contact information for non-existent individuals who supposedly worked at these vendor companies.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## [Wire Fraud]

26. Paragraphs 1 through 25 are hereby re-alleged and incorporated by reference as if fully set forth herein.

8

27.     Between in or about October 2013 through in or about August 2019, in Saratoga County in the Northern District of New York and elsewhere, the defendant, **DEREK R. SCHWARTZ**, devised and intended to devise a scheme and artifice to defraud Financing Company-1 and Financing Company-2, and to obtain money and property from Financing Company-1 and Financing Company-2, by means of materially false and fraudulent pretenses, representations, and promises.

28.     It was part of the scheme and artifice to defraud that **SCHWARTZ** regularly communicated with Steiner to ensure that Steiner was continuing to make misrepresentations to Financing Company-1 and to Financing Company-2. **SCHWARTZ** encouraged Steiner to continue making misrepresentations to the financing companies even when Steiner expressed discomfort about doing so.

29.     For the purposes of executing such scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, **SCHWARTZ** caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, and signals, that is, on or about November 16, 2016, Mann sent an email transmitted in interstate commerce to **SCHWARTZ**, titled "Another item," in which Mann mentioned **SCHWARTZ**' ongoing work with Steiner to defraud Financing Company-1 and the possibility that he would pay off the loans extended by Financing Company-1 so that Steiner would not have to lie to the company any longer:

> Derek ...
>
> I know you have been working with Luke. I do have an update for you to give him as well. We can talk about this live when we get time.
>
> I was hoping to drop off [Financing Company-1] this month. It is now looking beginning of 2017. When we talk I will explain.

9

Just remember this and bring it up.

Mike

All in violation of Title 18, United States Code, Section 1343.

## COUNT 3
### [Wire Fraud]

30. Paragraphs 1 through 29 are hereby re-alleged and incorporated by reference as if fully set forth herein.

31. Between in or about October 2013 through in or about August 2019, in Saratoga County in the Northern District of New York and elsewhere, the defendant, **DEREK R. SCHWARTZ**, devised and intended to devise a scheme and artifice to defraud Financing Company-1 and Financing Company-2, and to obtain money and property from Financing Company-1 and Financing Company-2, by means of materially false and fraudulent pretenses, representations, and promises.

32. For the purposes of executing such scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, **SCHWARTZ** caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, and signals, that is, on or about January 19, 2017, Mann sent an email transmitted in interstate commerce to **SCHWARTZ**, titled "One item," in which Mann mentioned the possibility that Steiner would leave Optum/UHG for another job, which would require Mann and **SCHWARTZ** to find another Optum/UHG employee to falsely verify fraudulent invoices to Financing Company-1 and to Financing Company-2, in furtherance of the scheme to defraud:

Derek ...

I know you hate getting emails from me. This is not a bad one.

You said Luke has an offer in hand and may take it. I know you were going to talk to him about staying put a little longer. ...

The other thing is I need you to plan on who will take over for Luke to do the verifications. We might need a couple people. We can discuss this the next time we talk as well.

Mike

All in violation of Title 18, United States Code, Section 1343.

## COUNT 4
## [Wire Fraud]

33. Paragraphs 1 through 32 are hereby re-alleged and incorporated by reference as if fully set forth herein.

34. Between in or about October 2013 through in or about August 2019, in Saratoga County in the Northern District of New York and elsewhere, the defendant, **DEREK R. SCHWARTZ**, devised and intended to devise a scheme and artifice to defraud Financing Company-1 and Financing Company-2, and to obtain money and property from Financing Company-1 and Financing Company-2, by means of materially false and fraudulent pretenses, representations, and promises.

35. It was part of the scheme and artifice to defraud that **SCHWARTZ** regularly and falsely confirmed to representatives of Financing Company-2 that TrueHR had received certain check payments from Weitz when, in fact, TrueHR had not. **SCHWARTZ** continued providing these false confirmations to Financing Company-2 even after TrueHR ceased operations in 2016. Mann also regularly advised **SCHWARTZ** to expect an email from a representative of Financing Company-2 seeking to confirm a payment from Weitz to TrueHR.

36. For the purposes of executing such scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and

11

promises, **SCHWARTZ** caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, and signals, that is, on or about January 25, 2018, Mann sent an email transmitted in interstate commerce to **SCHWARTZ**, titled "Check your trueHR email," in which Mann wrote, "I tried sending you a text. However, I am not sure if they went through. Just letting you know." In this email, Mann advised **SCHWARTZ** to expect to receive an email from a representative of Financing Company-2.

All in violation of Title 18, United States Code, Section 1343.

## COUNT 5
### [Wire Fraud]

37. Paragraphs 1 through 36 are hereby re-alleged and incorporated by reference as if fully set forth herein.

38. Between in or about October 2013 through in or about August 2019, in Saratoga County in the Northern District of New York and elsewhere, the defendant, **DEREK R. SCHWARTZ**, devised and intended to devise a scheme and artifice to defraud Financing Company-1 and Financing Company-2, and to obtain money and property from Financing Company-1 and Financing Company-2, by means of materially false and fraudulent pretenses, representations, and promises.

39. For the purposes of executing such scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, **SCHWARTZ** caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, and signals, that is, on or about January 25, 2018, Mann sent an email to **SCHWARTZ**, titled "Re: Check your trueHR email," in which Mann wrote, "I assume you sent it from your TrueHR email. I know it is stupid of me to say this every time." In this email, Mann sought to confirm that **SCHWARTZ** used his TrueHR email address to falsely

12

represent to a representative of Financing Company-2 that TrueHR – which had ceased operations in 2016 – received a payment from Weitz.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The allegations contained in Counts One through Five of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 1343 set forth in Counts One through Five of this indictment, the defendant, **DEREK R. SCHWARTZ**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, a money judgment representing the amount of unrecovered proceeds obtained by the defendant as a result of the offenses of conviction.

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

13

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Dated:   August 19, 2021

A TRUE BILL,   *REDACTION*

Grand Jury Foreperson

ANTOINETTE T. BACON
Acting United States Attorney

By: _____
Michael Barnett
Cyrus P.W. Rieck
Assistant United States Attorneys
Bar Roll Nos. 519140 and 518933