IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:21-CR-298 (LEK) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEREK R. SCHWARTZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**United States' Sentencing Memorandum**

The United States of America, through the United States Attorney for the Northern District of New York, respectfully asks that the Court sentence the defendant to a Guidelines term of imprisonment (78-97 months), to be followed by two years of supervised release, and to order restitution in the amount of $12,968,505.22.

On September 21, 2023, without a plea agreement, the defendant pled guilty to a five-count indictment charging conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349 (Count 1), and wire fraud in violation of 18 U.S.C. § 1343 (Counts 2-5).

The defendant is scheduled to be sentenced on August 28, 2024. He has never been in custody.

**1.      Factual Summary**

The Government relies on the facts set forth in the Presentence Investigation Report ("PSIR") ¶¶ 2-6, 8 (dkt. no. 50). The defendant was a co-conspirator of former ValueWise CEO Michael Mann, whom this Court sentenced to 144 months in prison in August 2021, and Luke Steiner, whom this Court sentenced to probation.

Mann obtained millions of dollars in loans from two financing companies, located in New York and Colorado, respectively, by falsifying his companies' receivables. Mann falsely told the

financing companies that Minnesota-based UnitedHealth Group Incorporated ("UHG") and its subsidiary OptumInsight Inc. ("Optum") owed millions of dollars to his Clifton Park-based companies. Mann routinely created fake invoices reflecting the fictitious debt and assigned them to the financing companies as collateral for loans.

The defendant was a high-level executive at Optum, and then began working for ValueWise in October 2013. Until about August 2016, he operated TrueHR, LLC, a ValueWise subsidiary based in Dallas, Texas. He continued to work for ValueWise until its collapse in September 2019.

In October 2013, the defendant and Mann asked Steiner, a UHG/Optum employee whom the defendant used to supervise at Optum, to represent to the financing companies that the fake invoices created by Mann were valid and payable by Optum. With the defendant's encouragement, Steiner regularly made these false verifications for six years, ending in August 2019.

The defendant also admitted he took these other actions in furtherance of the fraudulent scheme:

- In 2014 and 2015, he asked two other UHG/Optum employees to verify false invoices that Mann submitted to Financing Company-1. The defendant instructed these employees to respond to Financing Company-1's inquiries in the same manner as Steiner.

- From 2014 through 2019, the defendant lied directly to Financing Company-2. Mann falsely represented to Financing Company-2 that one of his companies, Weitz & Associates, needed loans in order to pay its vendors. As part of its due diligence process, Financing Company-2 verified, with Weitz' purported vendors, that they were receiving payments from Weitz. One such purported vendor was TrueHR, a ValueWise

company operated by the defendant. In fact, TrueHR was not a Weitz vendor, and the defendant regularly lied to Financing Company-2 about TrueHR receiving payments from Weitz – and continued to do so even after TrueHR ceased to exist as a company.

**2.    Statutory Maximums**

Maximum term of imprisonment: 20 years, pursuant to 18 U.S.C. §§ 1343, 1349.

Maximum fine: $250,000, pursuant to 18 U.S.C. § 3571(b)(3).

Supervised release term: the court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. *See* 18 U.S.C. § 3583.

**3.    Guidelines Calculation and Range**

**3.1    Criminal History Category**

The United States adopts the PSIR's conclusion that the defendant's criminal history category is I. PSIR ¶¶ 35-40.

**3.2    Offense Level**

The United States agrees with the Sentencing Guidelines offense level calculation set forth in the PSIR, resulting in a post-acceptance offense level of 28. *See* PSIR ¶¶ 20-34.

The Government agrees with the PSIR's conclusion that the defendant's offense conduct warrants a +2 upward adjustment for supervisory role, pursuant to U.S.S.G. § 3B1.1(c), and a +2 upward adjustment for substantial financial hardship to one or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(iii).

As the PSIR notes, the defendant recruited co-defendant Luke Steiner into the scheme, as well as two others identified in the indictment as Individual-1 and Individual-2. PSIR ¶ 27. The Government's offer of proof, which the defendant admitted was accurate when he pled guilty, noted that the defendant (a) introduced Steiner to Mann; (b) conveyed, to Steiner, Mann's

instructions for falsely verifying receivables; (c) regularly communicated with Steiner to make sure Steiner was continuing to lie to the victims; and (d) recruited two other Optum/UHG employees to falsely verify receivables, as Steiner had been doing. The defendant's supervisory role easily qualifies for a +2 upward adjustment. *See*, *e.g.*, *United States v. Kilkenny*, 493 F.3d 122, 130-131 (2d Cir. 2007) (affirming district court's conclusion that the defendant's offense conduct merited a 2-level enhancement because he supervised a bookkeeper who, at his direction, prepared fraudulent tax forms and other documents that were used in a bank fraud scheme).

The defendant's offense conduct also merits a +2 upward adjustment for causing substantial financial hardship to Financing Company-2. As the PSIR notes, Financing Company-2 dissolved, and had to transfer its assets to secured creditors, due to the financial hardship caused by the fraudulent scheme. PSIR ¶ 24. *See* U.S.S.G. § 2B1.1 note 4(F)(i) ("In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim … becoming insolvent").

### 3.3     Guidelines Range

The applicable Sentencing Guidelines range is 78 to 97 months in prison. PSIR ¶ 58. As there is no plea agreement, there is no appeal-of-sentence waiver.

### 4.     Sentencing Recommendation

The Government respectfully asks the Court to (i) impose a Guidelines term of imprisonment (78-97 months); (ii) impose a two-year term of post-imprisonment supervised release; and (iii) order restitution in the amount of $12,968,505.22.

Such a sentence would be sufficient and not greater than necessary to achieve the goals set out in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the nature and circumstances of the offenses, and the history and characteristics of the defendant; the need for the

sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; the need for the sentence to afford adequate deterrence to criminal conduct; and the need to provide restitution to victims of the offenses.

A term of imprisonment, within the Guidelines range, is especially warranted by the nature and circumstances of the offenses. The defendant committed many fraudulent acts, over a number of years, that resulted in substantial financial harm, loss of jobs and a felony conviction for his former mentee.

For years, the defendant helped Mann commit fraud against the Financing Companies. The fraud involved frequent lies to the Financing Companies about Mann's companies having substantial receivables payable by UHG/Optum (the defendant's former employer). The defendant recruited other people into the scheme, including Steiner, who initially did not know Mann and who looked up to the defendant as a mentor. The defendant abused this mentor-mentee relationship when he recruited Steiner into the fraud and helped keep Steiner in the scheme for years. Steiner's felony conviction in this case, while a product of his own terrible decision-making, is also attributable to the defendant's selfish decision to exploit him.

Another part of the fraud involved the defendant directly lying to Financing Company-2, for years. Because Financing Company-2 was being falsely told that one of Mann's companies (Weitz and Associates) needed loans to pay its vendors, Mann and the defendant arranged for purported representatives of these "vendors" to falsely verify receipt of payment from Weitz. For years, the defendant lied directly to Financing Company-2 about TrueHR (the defendant's company) being a "vendor."

In fact, TrueHR was a money-losing and ultimately failed startup, run by the defendant, that Valuewise (Mann) funded in the amount of several million dollars. On more than 30 occasions

between 2014 and December 2018, the defendant sent emails from his TrueHR email address to Financing Company-2 falsely confirming TrueHR's purported receipt of a total of approximately $15.5 million in checks from Weitz. Many of these verifications occurred after August 2016, when TrueHR ceased to exist and its remaining operations were folded into ValueWise. In fact, TrueHR never received any of the payments that the defendant said it received.

The defendant may point to his personal and professional history as mitigating factors. But his pre-fraud achievements – father and husband, highly educated person, highly compensated corporate executive – proves he knew better, and could have done better if he so chose. That he chose to continue participating in this scheme, in spite of a capacity to do better, demonstrates that he simply did not want to play by the rules, and preferred to defraud others rather than honestly make money. The defendant could have walked away from Michael Mann's scheme, and yet he never did – ValueWise was paying the defendant's salary until it collapsed. Moreover, the defendant's background makes his conduct all the more concerning and in need of correction. If the good things in life – family, education, wealth – do not serve as deterrents and barriers to committing crimes, then it is all the more important to impose a term of imprisonment that will deter and reform the defendant and protect the public from future financial crimes.

***

Restitution in the amount of $12,968,505.22 should be ordered. PSIR ¶¶ 72-73.

The proposed special conditions of supervised release are justified by the offenses of conviction, as well as the defendant's history and characteristics. Proposed conditions 1 through 3 are justified by the defendant's anticipated restitution obligation; access to financial information (condition 3) would also help the Probation Officer determine whether the defendant is again committing fraud and deter the defendant from committing more crimes.

Proposed conditions 4 and 5 are justified by the defendant's self-reporting as to mental health issues. *See* PSIR ¶ 48. Proposed condition 6 is standard in cases where there are identified victims.

***

The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed R. Crim. P. 32(h), (i)(1)(c). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

Dated:   August 7, 2024                                                 Respectfully submitted,

                                                                           CARLA B. FREEDMAN
                                                                           United States Attorney

By:     */s/ Michael Barnett*
        Michael Barnett and Cyrus P.W. Rieck
        Assistant United States Attorneys
        Bar Roll Nos. 519140 and 518933